IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| DeWITT CARMAN PORTER<br>NANCY EILEEN PORTER, | : | BANKRUPTCY NO.: 5-06-bk-50099 |
| DEBTORS | : | |
| INDEPENDENT MORTGAGE<br>COMPANY, | : | {**Nature of Proceeding**: Objection to Confirmation of the Chapter 13 Plan Dated July 11, 2006 (Doc. 50, 54)} |
| OBJECTOR | : | |
| vs. | : | |
| DeWITT CARMAN PORTER<br>NANCY EILEEN PORTER, | : | |
| RESPONDENTS | : | |

# OPINION

In a matter of first impression, the Debtors are proffering, in their Second Amended Chapter 13 Plan (Doc. #50), treatment of a secured lender that appears quite consistent with the provisions of 11 U.S.C. A. § 1325. Notwithstanding, that plan must fail.

There is no disagreement on the underlying facts.

The Debtors engaged a contractor to build their home. A construction loan was secured to finance the construction. Unfortunately, the Debtors were unable to secure traditional financing to satisfy the construction mortgage, and the construction mortgage

matured shortly prior to the Debtors' bankruptcy.

The Debtors' home is worth about $155,000.[1] The proof of claim of the Objector, Independent Mortgage Company, Inc. (IMC), is $105,895.90. IMC is the current holder of the construction mortgage.

In their First Amended Chapter 13 Plan (Doc. #42), the Debtors proposed to pay interest only on the mortgage through the life of the plan with a balloon payment towards the end of the five year plan. Confirmation of that plan was denied as violative of § 1325(a)(B)(iii)(I) of the Bankruptcy Code, which requires that distributions to a creditor be in equal amounts.

Not to be discouraged by this, the Debtors presented their second plan which paid interest only to the Trustee, but deferred distribution to IMC until the end of the 48 month plan when the Debtors would either sell or refinance. This complied with the literal requirements of § 1325(a)(B)(iii) since only one "distribution" to the creditors would occur. As if in an effort to address the harsh impact of this proposal, the Debtors included a provision that IMC could waive the requirements of § 1325(a)(B)(iii) and receive interest only distributions from the Trustee. The Debtors also included a provision in the plan that dismissal of the confirmed bankruptcy would result in the interest-only fund held by the Trustee being released to IMC, instead of being returned to the Debtors.[2] No

---

[1] Unchallenged testimony at the earlier confirmation hearing between the parties.

[2] At trial on this matter, Debtors' counsel erroneously referenced this provision as being triggered by conversion.

provision was included regarding a possible conversion to Chapter Seven, which would likely result in the fund being returned to the Debtors. *Stamm v. Morton (In re Stamm)*, 222 F.3d 216 (5th Cir. 200) relying on 11 U.S.C. A. § 348(f)((1)(A). The possibility of permitting a lump sum payment in a confirmable plan has been recognized by a leading treatise. 8 Collier on Bankruptcy, ¶ 1325.06(3)(b)(ii)(A) at 1325-39 (15th ed. rev'd).

While literal compliance with § 1325(a)(5) may have been met, I am concerned that the plan may not have been proposed in good faith in compliance with § 1325(a)(3).

I raise this issue because the bankruptcy court has a responsibility to verify that a Chapter 13 Plan complies with the Code, regardless of objection. *In re Szostek,* 886 F.2d 1405, 1406 (3d Cir.1989).

The Debtors are residing in a household making potentially returnable interest payments with no benefit to the secured creditor except the expectancy that sometime within the next four years it may see a return on its financial advancement, assuming a stable market. No explanation has been tendered by the Debtors why an immediate liquidation of their home would prevent a fresh start or why *this* residence is necessary for a successful reorganization. The burden of demonstrating good faith in the advancement of the plan is on the Debtor, *In re Aprea,* -- B.R. --, 2007 WL 1219397, (Bkrtcy.E.D.Tex. 2007), yet not a scintilla of evidence was offered the Court on that point. The Debtors have even tendered a plan that modifies the mortgage contract to remove the ability of the lender to add attorney's fees and costs to the amount of the mortgage without specific approval of the Court. No explanation is given as to the reason

[m:\users\cathy\opinions\5-06-bk-50099_Porter.wpd]     3

Case 5:06-bk-50099-JJT    Doc 66    Filed 06/15/07    Entered 06/15/07 10:39:39    Desc
                             Main Document        Page 3 of 5

for this modification. The conclusion is that this provision is proffered to enhance Debtors' return to the detriment of the creditors.

Feasibility under § 1325(a)(6) is also a concern for the Court. Plans offering to liquidate an asset well into the future have been rejected as imposing an unreasonable delay on creditors. *In re Isaac*, 2005 WL 3939839 (Bkrtcy.N.D.Ill. 2005). In fact, the *Isaac* court found no reported case where the delay extended beyond six months. *Id.* at 3. In *In re Gavia,* 24 B.R. 216 (Bankr.E.D.Cal. 1982), *aff'd,* 24 B.R. 573 (B.A.P. 9th Cir. 1982), the bankruptcy court reviewed and rejected a plan that offered to liquidate property six months after confirmation. The court saw this as too speculative. As one court has noted:

> The Court can foresee a whole host of possible events which could conceivably preclude the occurrence of debtors' planned sale/refinancing. Changed market conditions, interest rates, or lending practices may make a sale or refinancing of debtors' residences impossible within the next three to five years. Debtors' personal situations may foreclose the option of obtaining alternative housing some three to five years hence. Further, a non-consensual tax or judgment lien could attach to the debtors' properties thereby eliminating the equity necessary to obtain the funds to liquidate the debtors' plans. Finally, as the *Gavia* court noted, the debtors could convert their cases to Chapter 7 proceedings, claim their homestead exemption and, thereby, eliminate the equity necessary to liquidate their plans.
>
> In short, given the myriad of contingencies which could operate to preclude the proposed sale/refinancing of the debtors' residences, particularly where the sale/refinancing is postponed for three to five years, the Court simply cannot conclude that debtors' plans satisfy the feasibility requirement of § 1325(a)(6).(Footnote omitted).

*In re Hogue,* 78 B.R. 867, 874 (Bkrtcy.S.D.Ohio 1987).

It is for those reasons indicated that the plan presented must fail.

My Order will follow.

Date: June 15, 2007 BY THE COURT

John J. Thomas, Bankruptcy Judge

(CMS)

*This opinion is electronically signed and filed on the same date.*

[m:\users\cathy\opinions\5-06-bk-50099_Porter.wpd]    5